UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EDWARD B. SPENCER,

Plaintiff,

v.

STUART SHERMAN, et al.,

Defendants.

Case No.: 1:21-cv-01551-JLT-CDB (PC)

**ORDER REGARDING PLAINTIFF'S REBUTTAL TO DEFENDANT'S ASSERTION OF OFFICIAL INFORMATION PRIVILEGE**

(Doc. 69)

Plaintiff Edward B. Spencer is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983.

**I. INTRODUCTION**

On September 2, 2026, Plaintiff filed a document titled "Plaintiff's Rebuttal to Defendant's Assertion of Official Information Privilege." (Doc. 69.) Although it is not entirely clear from Plaintiff's filing, the Court infers Plaintiff objects to Defendant's assertion of the official information privilege pursuant to California Evidence Code section 1040 in responding to an unspecified discovery request or requests by Plaintiff. (*Id*. at 1.) Plaintiff contends the assertion is "legally baseless, disingenuous, and deployed improperly to shield institutional misconduct rather than to protect genuine institutional safety." (*Id*.) Further, Plaintiff claims the "privilege is entirely negated by the facts of this case" and lists four subjects,[1] although the information

[1] Plaintiff lists the following: "1. Direct Retraction: The alleged reporting inmate voluntarily signed a Marriage

provided lacks any context as Plaintiff has failed to provide the Court with any relevant documentation or background information. (*Id*. at 1-2.)[2] Thereafter, Plaintiff cites to *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992), *Kerr v. United States District Court*, 511 F.2d 192 (9th Cir. 1975), and California Evidence Code section 1040(b)(2), but provides no analysis. (*Id*. at 2.) In conclusion, Plaintiff asserts Defendant "cannot weaponize a confidentiality privilege to cover up a phantom security threat," and asserts that "[b]ecause the 'safety concern' has been formally retracted via mutual chronos and both parties acknowledge the lack of animosity, the Official Information Privilege is inapplicable." (*Id*. at 3.) Plaintiff asks the Court to overrule and set aside the asserted privilege and to order that the "complete, unredacted statements and records regarding the alleged reporting source" be disclosed. (*Id*.)

On September 17, 2026, Defendant Lopez filed a response to Plaintiff's Rebuttal. (Doc. 70.) Construing Plaintiff's filing as a motion to compel, Defendant argues the motion should be denied because Plaintiff failed to include the discovery request at issue, the Court should not reply on Plaintiff's word that no safety concerns exist because his assertion is unsupported by any evidence of his need for the material, and "individuals such as the reporting inmate cannot waive the official-information privilege." (*Id*. at 1-2.) Defendant explains that in response to the Court's earlier order, "all deposition notices, subpoenas, proofs of service, deposition exhibits, and relevant emails and attachments between defense counsel and SATF's Litigation Office regarding scheduling" of the impeachment depositions were produced to Plaintiff. (*Id*. at 2.) Defendant withheld one email exchange "because it discussed possible inmate safety concerns in connection with one of" the witnesses and "Defendant noted that disclosure of such information would endanger the safety of one or more inmates and the security of the institution" and was "therefore

---

Chrono on the exact same date stating explicitly that he has no safety concerns. [¶] 2. Mutual Acknowledgment: Plaintiff and the alleged reporting inmate have directly discussed the matter; Plaintiff informed him that his retraction of the declaration is already known. [¶] 3. Absence of Animosity: Both parties signed independent chronos confirming an entire lack of safety concerns, and there is zero ongoing animosity or threat between them. [¶] 4. Waiver: Under Evidence Code § 1040 (b) (2), no privilege can be claimed when the person authorized has consented to disclosure or when the foundational necessity for secrecy no longer exists." (Doc. 69 at 2, emphasis omitted.)

[2] *See, e.g.*, *Grabek v. Dickinson*, No. CIV S-10-2892 GGH P, 2012 WL 113799, at *1 (E.D. Cal. Jan. 13, 2012) (denying the plaintiff's discovery motion as inadequately supported); *Womack v. Virga*, No. CIV S-11-1030 MCE EFB P, 2011 WL 6703958, at *3 (E.D. Cal. Dec. 21, 2011).

protected by the official-information privilege and the third party's right to privacy, including California Code of Regulations, title 15, section 3321." (*Id.*) Defendant maintains that Plaintiff now seeks to compel production of the email exchange on the basis he knows the individual's identity, that he has discussed it with that individual and there are no safety concerns, and that that individual "has waived the privilege," despite failing to support his motion with a supporting declaration or other competent evidence. (*Id.*)

More specifically, Defendant contends that while Plaintiff "believes he knows the identity of the reporting inmate, to protect their safety and security, Defendant has and will not acknowledge and reveal the reporting inmate's identity." (Doc. 70 at 3.) Thus, Defendant argues that "[w]ithout knowing who they are" Plaintiff cannot support his arguments "in a declaration signed under penalty of perjury, nor does he offer any other competent evidence to support his claimed need for the documents." (*Id.*) Defendant maintains that this is especially true because "the issue involves the safety and security of an inmate" and, as the privilege asserts, "the release of such information would violate the inmates' right to privacy and safe housing, could diminish the ability of prison staff to maintain security, and even jeopardize the life of the inmate and their family." (*Id.*) Defendant contends there exists a risk that Plaintiff could share the information with others who might then "harass the reporting inmate, and he could even be labeled a 'snitch' which has serious consequences in prison …." (*Id.* at 3-4.) Defendants maintain the potential harm "is too severe to risk and should be protected from disclosure." (*Id.* at 4.)

Next, Defendant contends Plaintiff "fails to explain how this document is necessary for prosecuting his case, inquiring about the credibility of his witnesses, or dispelling his baseless concern that defense counsel engaged in 'witness tampering' or 'improper communications' with his witness, which is why he requested the documents in the first place." (Doc. 70 at 4.) Because this action proceeds on Plaintiff's Eighth Amendment failure to protect claim for Defendant's alleged failure to wear a face mask, causing Plaintiff to contract COVID-19, Defendant avers that it is unclear how the withheld email exchange would assist Plaintiff in proving his claim and that Plaintiff was provided with "all documents and communications between defense counsel and his witnesses." (*Id.*) Defendant states that the email exchange at issue —communications between

defense counsel and the facility's litigation coordinator "regarding possible safety concerns stemming from one witness' deposition"— has no bearing on Plaintiff's "ability to inquire about the credibility of his witnesses, nor does it prove that defense counsel engaged in witness tampering," particularly where the exchange did not involve defense counsel or any of Plaintiff's witnesses. (*Id*.)

Finally, Defendant contends that Plaintiff's assertion concerning California Evidence Code section 1040(b)(2) "assumes the reporting inmate consented to disclosing the email communication" but Plaintiff has failed to provide any evidence of that consent. (Doc. 70 at 4.) Nonetheless, Defendant argues that even had the reporting inmate consented to such a disclosure, "that would not waive the official-information privilege because the privilege is not his to waive" for its assertion and waiver belong to the government. (*Id*. at 5.) Therefore, because the reporting inmate cannot waive the asserted privilege, Defendant maintains Plaintiff's motion should be denied. (*Id*.)

## II. DISCUSSION

Federal common law recognizes a qualified privilege for official information. *Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975). In determining what level of protection should be afforded by this privilege, courts conduct a case-by-case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege. *Soto v. City of Concord*, 162 F.R.D. 603, 613-14 (N.D. Cal. 1995); *see Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990); *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal. 1987); *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992); *Hampton v. City of San Diego*, 147 F.R.D. 227, 230-31 (S.D. Cal. 1993).

However, before a court will engage in this balancing of interests, the party asserting the privilege must properly invoke the privilege by making a "substantial threshold showing." *Kelly*, 114 F.R.D. at 669. To make a substantial threshold showing of a qualified privilege, a "party must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has

personal knowledge of the principal matters to be attested to in the affidavit or declaration." *Id.* The affidavit must include: "(1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made." *Id.* at 670; accord *Chism v. Cnty. of San Bernardino*, 159 F.R.D. 531, 533 (C.D. Cal. 1994); *Hampton*, 147 F.R.D. at 230-31; *Miller*, 141 F.R.D. at 301. A strong affidavit would also describe how the plaintiff could acquire information of equivalent value from other sources without undue economic burden. *Kelly*, 114 F.R.D. at 670.

If the court concludes that a defendant's submissions are not sufficient to meet the threshold burden, it will order disclosure of the documents in issue. If a defendant meets the threshold requirements, and Plaintiff has made the required showing in the motion to compel, the court will order an *in camera* review of the material and balance each party's interests. *See Kelly,* 114 F.R.D. at 671; *Chism*, 159 F.R.D. at 533-34; *Hampton*, 147 F.R.D. at 231; *Miller*, 141 F.R.D. at 301.

However, before the Court orders disclosure or an *in camera* review, the burden shifts to Plaintiff to prove: (1) how the requested information is relevant to the litigation or is reasonably calculated to lead to the discovery of admissible evidence; (2) the interest that would be harmed if the material were not disclosed; and (3) how that harm would occur and how extensive it would be. *Kelly*, 114 F.R.D. at 670-71.

Here, Defendant submitted a privilege log and supporting declaration concerning the withheld email exchange. (*See* Doc. 70-1 at 2, ¶ 3; Doc. 70-3 [Ex. B-Privilege Log]; Doc. 70-4 [Ex. C-Declaration of J. Barba].) These materials reveal that Barba's declaration includes the five requirements for a substantial threshold showing concerning the official information privilege. *Kelly*, 114 F.R.D. at 670. Thus, the burden shifts to Plaintiff to prove: (1) how the requested

information is relevant to the litigation or is reasonably calculated to lead to the discovery of admissible evidence; (2) the interest that would be harmed if the material were not disclosed; and (3) how that harm would occur and how extensive it would be. *Id.* at 670-71. Because Plaintiff has not filed a reply to Defendant's response, the Court reviewed his "Rebuttal" pleading. Based thereon, the Court finds it is unclear how an email exchange between defense counsel and the facility's litigation coordinator is relevant to his claim in this litigation. Simply stating Defendant's assertion of the privilege "is legally baseless, disingenuous, and deployed improperly to shield institutional misconduct …" is insufficient.

Equally unclear is how Plaintiff's interest would be harmed if the email exchange between defense counsel and the litigation coordinator about potential safety concerns were not disclosed. And Plaintiff's assertion that the official information privilege "is entirely negated" by "facts" that he fails to support by way of a declaration under penalty of perjury or other documentation does not explain the former or how any harm would occur and how extensive it would be. Plaintiff fails to support his argument that Defendant's assertion of the privilege at issue involves "phantom" threats to the safety and security of the institution. At bottom, Plaintiff has failed to meet his burden. *Kelly*, 114 F.R.D. at 670-71. Because Plaintiff has failed to meet his burden, the Court finds *in camera review* of the withheld email exchange between defense counsel and the litigation coordinator to be unnecessary and will therefore deny Plaintiff's "Rebuttal."

## III. CONCLUSION AND ORDER

Accordingly, for the reasons stated above, the Court **HEREBY ORDERS** that Plaintiff's Rebuttal (Doc. 69) filed September 2, 2026 is **DENIED**.

The Court notes that the deadlines for the completion of all discovery and for the filing of dispositive motions have passed. (*See* Doc. 53 at 16-17.) Further, it notes that Defendant timely filed a motion for summary judgment on October 5, 2026, and advises the parties that following

//

//

//

//

the completion of briefing, the motion will be deemed submitted and decided in due course. *See* Local Rule 230(*l*).[3]

IT IS SO ORDERED.

Dated: **October 8, 2026**

UNITED STATES MAGISTRATE JUDGE

[3] This Court is currently experiencing a continuing judicial emergency that substantially affects judicial resources. *See* https://www.caed.uscourts.gov/caednew/index.cfm/news/judicial-emergency/. Delays, while unfortunate, are inevitable.